ORIGINAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

IN RE WARREN LEE HILL, JR.,  )
    Petitioner              )
                       )
                       )
                       )
                       )

THIS IS A CAPITAL CASE
Case No. 15-

U.S. COURT OF APPEALS
RECEIVED
CLERK

JAN 1 5 2015

**APPLICATION FOR PERMISSION TO FILE A SECOND
PETITION FOR WRIT OF HABEAS CORPUS IN THE
DISTRICT COURT PURSUANT TO 28 U.S.C. § 2244(b)(2)(A) AND
REQUEST PURSUANT TO THE DECLARATORY JUDGMENT
ACT, 28 U.S.C. § 2201, TO CERTIFY CERTAIN LEGAL
QUESTIONS TO THE UNITED STATES SUPREME COURT**

**EXPEDITED REVIEW REQUESTED**

Brian S. Kammer (Ga.406322)
Marcia A. Widder (Ga. 643407)
Georgia Resource Center
303 Elizabeth Street, NE
Atlanta, Georgia 30307
Telephone: (404) 222-9202
Fax: (404) 222-9212

COUNSEL FOR MR. HILL

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

PROCEDURAL HISTORY ............................................................................... 5

ARGUMENT AND AUTHORITY ................................................................... 17

I.    The Panel Should Not Construe Prior Panel Decisions Issued In The Context Of Requests For Leave To File A Second Or Successive Habeas Corpus Petition As Binding Precedent And Should Review The Issues Raised In This Application *De Novo.* ........... 17

II.    Mr. Hill Presented Ample Evidence That He Is Intellectually Disabled, But Georgia's Unique "Beyond Reasonable Doubt" Standard Unconstitutionally Denied Him "A Fair Opportunity To Show That The Constitution Prohibits [His] Execution." *Hall*, 134 S. Ct. at 2001 ..................................................................................... 20

    A.    "*Atkins* Did Not Give The States Unfettered Discretion To Define The Full Scope Of The Constitutional Protection [Against Executing The Intellectually Disabled]." *Hall*, 134 S. Ct. at 1998 ..................................................................................... 26

    B.    States Must Not Impose Requirements That "Create[] An Unacceptable Risk That Persons With Intellectual Disability Will Be Executed." *Hall*, 134 S. Ct. at 1990. ....................................... 32

    C.    *Hall* Establishes That States May Not Ignore Clinical Diagnostic Practices And Definitions In Formulating Procedures To Enforce The Eighth Amendment Under *Atkins*. .......... 36

III.    Because Mr. Hill's Claim Establishes That He Is Actually Innocent Of the Death Penalty And That His Execution Would Thus Be A Miscarriage Of Justice, He Should Be Allowed To File A Successive Habeas Petition, Irrespective Of The Literal Language Of 28 U.S.C. § 2244(b)(1). ...................................... 38

IV.   Mr. Hill Has Made a Prima Facie Showing That His Application Satisfies 28 U.S.C. § 2244(b)(2)(B). ........................................................ 42

    A.   The Rule Articulated in *Hall v. Florida* Constitutes a New Rule of Constitutional Law for Purposes of 28 U.S.C. § 2244(b)(2)(A)................................................................................... 43

    B.   *Hall v. Florida* Should Be Applied Retroactively, As It Is A Substantive Rule. .................................................................................. 45

V.   This Court Should Certify The Important Questions Raised In This Case To The United States Supreme Court In Order To Obtain Definitive Rulings In Light Of The AEDPA's Language Rendering Panel Decisions Under Section 2244 Otherwise Unreviewable. ......................................................................................... 48

CONCLUSION ..................................................................................................... 50

CERTIFICATE OF SERVICE .............................................................................. 51

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

IN RE WARREN LEE HILL, JR.,      )
      Petitioner,      )      THIS IS A CAPITAL CASE
              )      Case No. 15-
              )
              )

## BRIEF IN SUPPORT OF APPLICATION FOR PERMISSION TO FILE A SECOND PETITION FOR WRIT OF HABEAS CORPUS IN THE DISTRICT COURT PURSUANT TO 28 U.S.C. § 2244(b)(2)(A) AND REQUEST PURSUANT TO THE DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201, TO CERTIFY CERTAIN LEGAL QUESTIONS TO THE UNITED STATES SUPREME COURT

Petitioner, Warren Lee Hill, Jr., by and through undersigned counsel, respectfully moves this Honorable Court, pursuant to 28 U.S.C. § 2244(b)(3), for an order authorizing the United States District Court for the Middle District of Georgia to consider a second habeas corpus petition based upon actual innocence of the death penalty and to have this Court certify certain legal questions to the United States Supreme Court.

## INTRODUCTION

The question before this Court is whether Mr. Hill should have an opportunity to show that he is innocent of the death penalty and ineligible for execution because

1

the United States Supreme Court's recent decision in *Hall v. Florida*, 134 S. Ct. 1986 (2014), establishes that Georgia's beyond-a-reasonable-doubt standard for determining intellectual disability is constitutionally infirm, as it renders virtually meaningless the protection against wrongful execution afforded to intellectually disabled individuals under *Atkins v. Virginia*, 536 U.S. 304 (2002), particularly for those whose intellectual abilities fall within the upper range of intellectual disability. The *Hall* Court described the strict limitations on States' abilities to circumscribe *Atkins'* protections:

> The death penalty is the gravest sentence our society may impose. Persons facing that most severe sanction must have a fair opportunity to show that the Constitution prohibits their execution. Florida's law contravenes our Nation's commitment to dignity and its duty to teach human decency as the mark of a civilized world. The States are laboratories for experimentation, but those experiments may not deny the basic dignity the Constitution protects.

*Hall*, 134 S. Ct. at 2001.

Like Florida's strict IQ cutoff at issue in *Hall*, Georgia's beyond-a-reasonable-doubt standard for intellectual disability "den[ies individuals] the basic dignity the Constitution protects" and "contravenes our Nation's . . . duty to teach human decency as the mark of the civilized world." This is even clearer given

Georgia's status as the **only** state in the nation to impose such an onerous and, in practice, virtually insurmountable burden.[1]

Indeed, but for Georgia's uniquely high burden for proving that a capital defendant is not eligible for execution on the basis of intellectual disability, Mr. Hill would have been found intellectually disabled in state habeas proceedings and would not be facing execution today.

In initial state habeas proceedings, the state habeas court judge found that Mr. Hill's IQ was approximately 70 beyond a reasonable doubt but that Mr. Hill had not proven his intellectual disability beyond a reasonable doubt because, even though his 70 IQ demonstrated significantly subaverage intellectual functioning, Mr. Hill had not proven sufficient deficits in adaptive functioning beyond a reasonable doubt given his history.[2] In a subsequent order reversing its prior order and granting relief, the court noted that, were the burden of proof merely a preponderance of the

---

[1] *See Hall*, 134 S.Ct. at 1996-98 (recognizing as meaningful the "consistency of the trend" away from the Florida practice at issue in determining whether the Florida practice is compatible with the Eighth Amendment).

[2] *See* Order of May 13, 2002, *Hill v. Head*, Butts Co. Superior Court Case No. 1994-V-216, at 4-6.

evidence, it would find that Mr. Hill is intellectually disabled.[3] The court's findings

and its rejection of Mr. Hill's intellectual disability claim were affirmed on appeal

and left undisturbed in subsequent federal habeas corpus proceedings.

In a successive state habeas proceeding, litigated under warrant in 2012, the

state habeas court again found that Mr. Hill had proven by a preponderance of the

evidence that he is intellectually disabled, but had fallen short in proving intellectual

disability by Georgia's uniquely high burden of proof beyond a reasonable doubt.[4]

Had Mr. Hill's disability been assessed in any other State in the country, he

would almost certainly have been found intellectually disabled and, thus, ineligible

for execution.

---

[3] *See* Order of November 19, 2002, *Hill v. Head*, Butts Co. Superior Court Case No. 1994-V-216, at 9.

[4] *See* Order of July 19, 2012, *Hill v. Humphrey*, Butts Co. Superior Court Case No. 2012-V-658, at 1-2. Moreover, even the State's own experts have now concluded they were mistaken in finding that Mr. Hill has borderline intellectual functioning and have each provided sworn affidavit testimony setting forth their opinions that Mr. Hill is indeed mildly intellectually disabled. *See In re Hill*, 715 F.3d 284, 288-89, 302-05 (11th Cir. 2013). There is thus no doubt now that his scheduled execution will violate the Eighth Amendment.

In light of *Hall*, Georgia's beyond-a-reasonable-doubt standard must be revisited and deemed unconstitutional, as the standard critically undermines the protections afforded under *Atkins v. Virginia*, 536 U.S. 304 (2002).

This Court must intervene by certifying certain important legal questions to the United States Supreme Court, and granting leave to Mr. Hill to file a successive habeas petition in order to demonstrate that Georgia's uniquely high burden of proving intellectual disability by proof beyond a reasonable doubt does not survive the Supreme Court's recent intervening decision in *Hall* and that he accordingly cannot be executed due to his intellectual disability. By granting Mr. Hill's request to file a second petition for writ of habeas corpus, though, this Court can facilitate proper examination of Mr. Hill's intellectual disability claim in light *Hall v. Florida*, and prevent an execution that is unquestionably prohibited by the Eighth Amendment.

## PROCEDURAL HISTORY

Mr. Hill is a person in the custody of the State of Georgia under the terms of verdicts entered August 2, 1991, in the Superior Court of Lee County, Georgia. Pursuant to these judgments, Mr. Hill was convicted of murder and sentenced to death. The Supreme Court of Georgia affirmed Mr. Hill's convictions and death

sentence on March 15, 1993. *Hill v. State*, 263 Ga. 37 (1993), *cert. denied.*510 U.S. 950 (1993).

In April 1994, Mr. Hill filed a habeas corpus action in Butts County, Georgia, challenging his conviction and sentence. He was declared indigent by the court and allowed to proceed in forma pauperis. In March 1997, Judge John D. Allen, sitting as a visiting judge in Butts County Superior Court, received numerous affidavits regarding Mr. Hill's intellectual disability and other issues. On May 21, 1997, Judge Allen issued a limited writ of habeas corpus, finding that Mr. Hill had submitted sufficient credible evidence that he suffers from intellectual disability to warrant a jury trial before the Lee County Superior Court on the intellectual disability issue, pursuant to *Fleming v. Zant*, 259 Ga. 687 (1989).

Respondent appealed from the limited writ. The Georgia Supreme Court reversed and remanded the intellectual disability claim to the habeas court, directing it to decide whether Mr. Hill could prove his intellectual disability beyond a reasonable doubt. *See Turpin v. Hill*, 269 Ga. 302 (1998).

Following a hearing in December 2000, the state habeas court issued an order finding that Mr. Hill had proven that his IQ is approximately 70 or below beyond a reasonable doubt, but had not proven the existence of adaptive skill deficits beyond a reasonable doubt and thus had failed to establish his intellectual disability beyond

a reasonable doubt. *See* Order of May 13, 2002, *Hill v. Head*, Butts Co. Superior Court Case No. 1994-V-216. Subsequent to the May 2002 Order, but before the court finally disposed of the habeas petition, the United States Supreme Court decided *Ring v. Arizona*, 536 U.S. 584 (2002),[5] and *Atkins v. Virginia*, 536 U.S. 304 (2002).[6] In its "Supplemental Final Order," dated September 16, 2002, which denied Mr. Hill's remaining claims, the state habeas court expressed concern that its prior order determining the intellectual disability claim was invalid under the *Ring* decision. *See* Order of September 16, 2002, *Hill v. Head*, Case No. 1994-V-216.

Mr. Hill filed a motion for reconsideration of the May 2002 ruling in light of the intervening decisions in *Ring* and *Atkins*. On November 19, 2002, the state habeas court granted the requested relief, finding that the "reasonable doubt" burden of proof was contrary to *Atkins* and therefore unconstitutional because it allowed persons who are more likely than not intellectually disabled to be executed. *See* Order of November 19, 2002, *Hill v. Head*, Case No. 1994-V-216. The court also noted that Mr. Hill met the criteria for intellectual disability by a preponderance of

---

[5] In *Ring*, the Supreme Court held that the Sixth Amendment right to jury trial applies to findings in aggravation at the penalty phase of a capital trial.

[6] *Atkins* held that the execution of those suffering intellectual disability violates the Eighth Amendment's prohibition of cruel and unusual punishment.

the evidence. The court granted a limited writ to allow a jury to determine whether Mr. Hill is ineligible for the death penalty because of intellectual disability.

Respondent appealed the November 19, 2002, order, but did not contest the court's finding that Mr. Hill is intellectually disabled by a preponderance of the evidence and that he has an IQ of 70 beyond a reasonable doubt. Mr. Hill filed a cross-appeal on issues decided adversely.

Following briefing and oral argument, the Georgia Supreme Court reversed the state habeas court's November 19, 2002, order. *Head v. Hill*, 277 Ga. 255 (2003). The decision did not disturb the state habeas court's finding that Mr. Hill has intellectual disability by a preponderance of the evidence or that he has a 70 IQ beyond a reasonable doubt. It reinstated the death sentence on the ground that Mr. Hill had not proven his intellectual disability beyond a reasonable doubt.

In federal habeas corpus proceedings, Mr. Hill challenged the Georgia Supreme Court's holding that the Eighth Amendment was not offended by application of the beyond-a-reasonable doubt standard to an intellectual disability claim brought under *Atkins*. The district court denied relief on this and other grounds on November 11, 2007. On appeal to the Eleventh Circuit, a panel of this Court granted relief, finding that the "reasonable doubt" burden of proof for intellectual disability claims was unconstitutional because it "eviscerates the command of the

Eighth Amendment that the intellectually disabled shall not be executed, and is therefore 'contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States.'" *Hill v. Schofield*, 608 F.3d 1272, 1283 (11th Cir. 2010) (citing 28 U.S.C. § 2254(d)(1)). On November 22, 2012, a majority of the Court, sitting *en banc*, rejected the panel's reasoning in an opinion that affirmed the lower court's denial of habeas corpus relief. Over vigorous dissent, the majority concluded that the Georgia Supreme Court had not unreasonably applied *Atkins* in upholding application of the reasonable doubt standard to determine intellectual disability claims. *Hill v. Humphrey*, 662 F.3d 1335 (11th Cir. 2011) (*en banc*). The United States Supreme Court denied Mr. Hill's petition for a writ of certiorari on June 4, 2012.

On July 3, 2012, a warrant issued in the Superior Court of Lee County setting Mr. Hill's execution for a window from July 18 to July 25, 2012. On July 16, 2012, the Georgia Board of Pardons and Paroles denied Mr. Hill's petition for clemency.

On July 18, 2012, Mr. Hill filed a second Petition for Writ of Habeas Corpus in state habeas court, alleging that Mr. Hill is intellectually disabled and again challenging the application of the reasonable doubt standard to intellectual disability claims based on intervening case law. The court denied the Petition on July 19, 2012, reiterating its prior finding that Mr. Hill "has an I.Q. of 70 beyond a reasonable doubt

and that he meets the overall criteria for intellectual disability by a preponderance of the evidence," but finding that he does not satisfy the criteria for intellectual disability beyond a reasonable doubt; the court further held that application of the reasonable doubt standard does not offend either the Eighth Amendment or the Equal Protection Clause. *See* Order of July 19, 2012, Butts Co. Superior Court Case No. 2012-V-658.

On July 23, 2012, the Georgia Supreme Court denied Mr. Hill's Application for a Certificate of Probable Cause to Appeal (CPC). On the same day, the Georgia Supreme Court granted a stay of execution and granted CPC in a separate civil action regarding the state's lethal injection protocol. *See Hill v. Owen*, Georgia Supreme Court Case No. S12W1812 (Order of July 23, 2012).

On December 20, 2012, Mr. Hill filed in a Petition for Writ of Certiorari in the United States Supreme Court to review the Georgia Supreme Court's denial of a CPC on the intellectual disability claim. The Petition was denied on February 19, 2013.

On February 4, 2013, the Georgia Supreme Court dismissed the stay of execution and denied relief in *Hill v. Owens*, 292 Ga. 380 (2013). On February 5, 2013, the Lee County Superior Court issued a warrant for Mr. Hill's execution, scheduling it to occur between February 19 and 26, 2013.

On February 15, 2013, Mr. Hill filed another Petition for Writ of Habeas Corpus in state habeas court, raising the claim that he is intellectually disabled beyond a reasonable doubt and introducing new evidence in support of that claim. The state habeas court dismissed the Petition as procedurally barred on February 18, 2013, and, on February 19, 2013, the Georgia Supreme Court denied Mr. Hill's Application for a Certificate of Probable Cause to Appeal.

Mr. Hill immediately filed an application in this Court seeking permission to file a second habeas corpus petition raising the claim that the new evidence establishes that he is intellectually disabled beyond a reasonable doubt and thus innocent of the death penalty. This Court entered a stay of execution and ordered further briefing on the issue. *See* Order of February 19, 2013, *In re Hill*, Case No. 13-10702. In the original and supplemental briefing, Mr. Hill argued that he satisfied the requirements of 28 U.S.C. § 2244 (b) because he was seeking to raise a new claim − that he is intellectually disabled beyond a reasonable doubt − based on previously unavailable evidence establishing his actual innocence of the death penalty and that the AEDPA had not displaced the federal courts' traditional equitable powers to ensure justice in an appropriate case.[7]

---

[7] Mr. Hill argued that the language of § 2244 (b)(2)(B)(ii) was ambiguous and could not be read to clearly articulate a congressional intent to overrule the Supreme

Following briefing by the parties, a divided panel of this Court denied leave

to file a second habeas petition in the district court on April 22, 2013. *See Hill*, 715

F.3d at (Order of April 22, 2013). The majority ruled that Mr. Hill did not satisfy

the criteria for filing a second or successive petition set forth in 28 U.S.C. § 2244

(b). It concluded that Mr. Hill's application did not satisfy § 2244(b)(1) because Mr.

Hill had previously litigated the same claim in his initial habeas proceeding. *Id.* at

291-95. It further ruled that, regardless, Mr. Hill's intellectual disability claim did

not meet the narrow criteria set forth in § 2244(b)(2) because the claim established

only that Mr. Hill was actually innocent of the death penalty and not that "no

reasonable factfinder would have found [him] guilty of the underlying offense." *Id.*

at 295-99. The majority additionally refused to consider whether equitable

principles should inform its construction of § 2244. It instead ruled that the AEDPA

had abrogated the Supreme Court's decision in *Sawyer v. Whitley*, 505 U.S. 333, 345

(1992), which authorized federal courts to address the merits of a second or

---

Court's holding in *Sawyer v. Whitley*, permitting the litigation of otherwise barred
claims where the petitioner demonstrated he was "actually innocent of the death
penalty." Mr. Hill further urged that the Supreme Court's decisions demonstrated
that the AEDPA should not be read to abrogate the federal courts' equitable powers
to ensure justice in an appropriate case. *See* Brief in Support of Petitioner's
Application to File a Second Petition for Writ of Habeas Corpus at 16-30 (*In Re
Warren Lee Hill, Jr.*, Case No. 13-10702).

successive petition challenging a death sentence under the miscarriage of justice (or "actual innocence") exception where the petitioner presented "clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." *Id.* at 299-301.

Judge Barkett dissented, observing that "[t]here is no question that Georgia will be executing a[n intellectually disabled] man because *all* seven mental health experts who have ever evaluated Hill, both the State's and Hill's, now unanimously agree that he is [intellectually disabled]," and noting the "perverse consequence" of applying the AEDPA to require "a federal court [to] acquiesce to, even condone, a state's insistence on carrying out the unconstitutional execution of a[n intellectually disabled] person." *Hill*, 715 F.3d at 301, 302.

Judge Barkett took issue with the majority's dismissal of Mr. Hill's new evidence "as mere recantations, failing to acknowledge the very unusual circumstance of medical professionals unequivocally reversing their prior diagnoses and concluding [] to a reasonable degree of medical certain that Hill is [intellectually disabled]." *Hill*, 715 F.3d at 303. She further argued that "Congress cannot have intended [in the AEDPA] to preclude federal habeas relief for an individual who is constitutionally ineligible for execution," and that, while "[c]laims of freestanding

13

actual innocence of the underlying offense and categorical ineligibility for the death penalty" may not "'fit neatly into the narrow procedural confines delimited by AEDPA,'"[8] they "cannot be subject to AEDPA's restrictions when doing so will ensure that the U.S. Constitution is violated." *Id.* at 305.

As Judge Barkett explained, the Supreme Court "has not always adhered to a strict construction of 28 U.S.C. § 2244, particularly when determining whether a claim is subject to the restrictions on filing a 'second or successive' habeas petition," *Hill*, 715 F.3d at 305-06,[9] and further observed that the Supreme Court "has refused to construe AEDPA in a way that would undermine the 'equitable principles [which] have traditionally governed the substantive law of habeas corpus,'" *id.* at 306 (quoting *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010)). Accordingly, she disagreed with the majority both that "we must 'interpret[] AEDPA's statutory silence' regarding claims that an offender is categorically barred from receiving a

---

[8] Quoting *In re Davis*, 565 F.3d 810, 827 (11th Cir. 2009) (Barkett, J., dissenting). Judge Barkett's position was subsequently vindicated by the Supreme Court in *In re Davis*, 130 S. Ct. 1, 1 (2009), an original habeas petition the Supreme Court "transferred to the United States District Court for the Southern District of Georgia for hearing and determination."

[9] Judge Barkett went on to discuss the Court's decisions in *Stewart v. Martinez-Villareal*, 523 U.S. 637 (1988), and *Panetti v. Quarterman*, 551 U.S. 930 (2007). *Id.* at 306.

sentence of death 'as indicating a congressional intent to close courthouse doors that a strong equitable claim would ordinarily keep open,'" and that Congress would have intended AEDPA to preclude a federal court from hearing the claim of a juvenile or [intellectually disabled] offender who obtains, albeit after the conclusion of his prior federal habeas proceedings, irrefutable proof that his status constitutionally bars his execution forever." *Id.* at 307.

Both the majority and dissenting opinions pointed out that the decision denying permission to initiate a second federal habeas corpus action did not preclude Mr. Hill from seeking relief from this Court in a Petition for Writ of Habeas Corpus per *Felker v. Turpin*, 518 U.S. 651 (1996). *See id.* at 301 n.20; 307 n.8.[10]

On May 22, 2013, Mr. Hill filed a petition for writ of habeas corpus in the United States Supreme Court regarding the new evidence of his intellectual disability. The petition was denied on October 7, 2013. *In re Hill*, 134 S. Ct. 118 (2013).

---

[10] In *Felker*, Justice Souter noted in a concurring opinion that the Court's appellate jurisdiction was not entirely foreclosed by 28 U.S.C. § 2244, observing *inter alia* that 28 U.S.C. § 1245(2) permitted courts of appeal to certify questions to the Supreme Court. *Felker*, 518 U.S., at 667 (Souter, J., concurring, joined by Stevens, J., and Breyer, J.).

On May 27, 2014, the United States Supreme Court issued its decision in *Hall v. Florida*, in which the Court for the first time invalidated a state's approach to determining claims of intellectual disability under *Atkins v. Virginia*.

On August 29, 2014, Mr. Hill filed a fourth Petition for Writ of Habeas Corpus in state habeas court, alleging that *Hall v. Florida* required revisitation of his intellectual disability claim and his claim that the "beyond reasonable doubt" standard violates the Eighth Amendment and *Atkins*. That petition was denied on October 1, 2014. Mr. Hill requested reconsideration, which was denied on October 23, 2014. The next day, Mr. Hill timely filed a Notice of Appeal and, on November 26, 2014, filed a timely Application for Certificate of Probable Cause to Appeal. That application remains pending in the Georgia Supreme Court.[11]

---

[11] Although the *Hall v. Florida* claim is thus not yet fully exhausted, Mr. Hill has filed this action now because he has information that a warrant may issue shortly and he would like to give this Court sufficient time to address these complex issues without the pressure of an execution warrant with a short timetable. Because the exhaustion of state-court remedies is not jurisdiction in nature, the pendency of Mr. Hill's application in the Georgia Supreme Court does not require dismissal of this action. *See, e.g., Day v. McDonough*, 547 U.S. 198, 205 (2006) (noting that exhaustion of state remedies is "nonjurisdictional"); *Rhines v. Webber*, 544 U.S. 269 (2005) (holding that district court has discretion to stay a mixed petition to allow petition to exhaust state court remedies).

## ARGUMENT AND AUTHORITY

I.   **The Panel Should Not Construe Prior Panel Decisions Issued In The Context Of Requests For Leave To File A Second Or Successive Habeas Corpus Petition As Binding Precedent And Should Review The Issues Raised In This Application** *De Novo***.**

The Panel should not be bound by rulings made by prior panels that addressed requests for leave to file second or successive habeas corpus petitions under 28 U.S.C. § 2244(c). As Congress has structured habeas corpus law under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a request to file a second or successive habeas corpus petition "shall be determined by a three-judge panel of the court of appeals," whose ruling "shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari." 28 U.S.C. § 2244(b)(3)(B) and (E). In essence, Congress has rendered panel decisions on the right to file a second or successive habeas corpus petition wholly unreviewable. *See, e.g., Felker v. Turpin*, 518 U.S 651, 661 (1996) (noting that "[t]he Act does remove our authority to entertain an appeal or a petition for a writ of certiorari to review a decision of a court of appeals exercising its 'gatekeeping' function over a second petition").

Mr. Hill notes that a panel of this Court, in a recent application for leave to file a successive petition, "decline[d the] invitation to treat prior panel decisions of this Court issued in the context of applications to file second or successive petitions

17

as having no precedential value," on the ground that "three judge orders issued under § 2244(b) are not beyond all review" because "the statute does not preclude the Court of Appeals from rehearing such a decision *sua sponte.*" *In re Holsey*, No. 14-15468, 2014 U.S. App. LEXIS 24079, at *7 (11th Cir. 12/9/2014). Mr. Hill respectfully submits that the possibility that the *en banc* court would *sua sponte* rehear a case in this posture is so far removed as to be essentially a non-existent avenue of review. Accordingly, he respectfully submits that neither the *Holsey* decision, nor other decisions made in this posture, should be considered binding authority.

Rather, because the decisions of circuit-court panels reviewing applications to file successive habeas petitions are not susceptible to review and, if necessary, correction, it would accord unwarranted power to randomly selected appeals court panels to treat such decisions as binding authority. Indeed, because the AEDPA strips appellate courts, sitting *en banc*, and the Supreme Court of jurisdiction to review panel decisions, the predicates for the general rule that one panel may not overrule another,[12] simply have no bearing here. To the contrary, enforcement of the prior-panel rule would work an injustice by binding future panels to

---

[12]  *See, e.g., Cargill v. Turpin*, 120 F.3d 1366, 1386 (11th Cir.), ("Only the Supreme Court or this court sitting  en banc can judicially overrule a prior panel decision.").

unreviewable determinations of the law, irrespective of the correctness of those rulings.

The Supreme Court's routine practice of vacating lower court rulings when subsequent mootness renders those decisions unreviewable is instructive. In *Camreta v. Greene*, 131 S. Ct. 2020 (2011), the Court recently explained that "[t]he point of vacatur is to prevent an *unreviewable* decision 'from spawning any legal consequence,' so that no party is harmed by what we have called a 'preliminary' adjudication. . . . When happenstance prevents that review from occurring, the normal rule should apply: Vacatur then rightly 'strips the decision below of its binding effect,'" . . . "and clears the path for future relitigation.'" *Id.* at 2035 (quoting *United States v. Munsingwear*, 340 U.S. 36, 40-41 (1950), and *Deakins v. Monaghan*, 484 U.S 193, 200 ( 1988)) (emphasis supplied). *See also id.* at 2035 n.10 ("Vacatur expunges an adverse decision that would be reviewable had this case not become moot."); *cf. Standefer v. United States*, 447 U.S. 10, 22 n. 18 (1980) ("The estoppel doctrine . . . is premised upon an underlying confidence that the result achieved in the initial litigation was substantially correct. In the absence of appellate review, or of similar procedures, such confidence is often unwarranted.").

This panel, accordingly, is not bound by decisions from prior panels that have denied the right to file a second or successive habeas corpus application.[13]

## II. Mr. Hill Presented Ample Evidence That He Is Intellectually Disabled, But Georgia's Unique "Beyond Reasonable Doubt" Standard Unconstitutionally Denied Him "A Fair Opportunity To Show That The Constitution Prohibits [His] Execution." *Hall*, 134 S. Ct. at 2001.

Warren Hill has never been able to live on his own. Until early adolescence, he could not undertake basic self-care, such as brushing his teeth or bathing, without supervision by his younger sister Peggy. Described by several of his teachers as "the slowest student in the class," he managed to graduate from high school at the age of nineteen only because Peggy oversaw and often completed his homework, and because his teachers chose to socially promote him due to the lack of special educational resources in the public schools he attended as an African-American child in the then racially segregated South. Even today, at the age of 54, Warren Hill functions at roughly the 6th grade level, consistent with mild intellectual disability.

---

[13] In particular, there are two prior panel rulings that, if followed, would bar review but whose rationale and holdings, for the reasons discussed below, Sections III and IV(B) *infra*, should be rejected. Those are that the *Hall* decision may not be applied retroactively in successor litigation, *see In re Henry*, 757 F.3d 1151 (2014), and that the miscarriage of justice exception to procedural default applied to capital sentences ("actual innocence of the death penalty") did not survive the enact AEDPA's amendments to 28 U.S.C. § 2244, *see Hill*, 715 F.3d at 299-301 .

Although, for a few years, he managed to perform adequately in the highly structured life of the military,[14] this was only for as long as the duties of his rank required no more than compliance with orders and the completion of repetitive and simple tasks. Once the demands of the Navy became too challenging, Mr. Hill decompensated under the stress arising from his limited coping skills.[15]

Based on proof of these and other adaptive deficits, and undisputed evidence of "significantly subaverage general intellectual functioning" reflected in consistent I.Q. scores around 70, Mr. Hill's four mental health experts testified at the initial state court habeas proceedings that Mr. Hill satisfies Georgia's criteria for establishing intellectual disability.[16] The State presented contrary evidence from three mental health experts from Central State Hospital: Thomas H. Sachy, M.D., a neuropsychiatrist; James Gary Carter, M.D., a forensic psychiatrist; and Donald W. Harris, Ph.D., a clinical psychologist (all of whom have now reconsidered their

---

[14] As the Superior Court noted, Mr. Hill "minimally passed the entrance exam" for military service. Order of May 13, 2002, *Hill v. Head*, Case No. 1994-V-216, at 5.

[15] *See, e.g., Hill v. Schofield*, Case No. 1:04-CV-151 (M.D.Ga.) - Respondent's Exhibits 76-79, 100, 103 (State habeas transcripts and Petitioner's state habeas court briefing).

[16] *See* O.C.G.A. § 17-7-131(a)(3).

opinions and concluded that Mr. Hill is in fact intellectually disabled). *See Hill*, 715 F.3d at 288-89, 302-05. At the time of the initial state habeas proceedings, these evaluators effectively found that Mr. Hill's I.Q. of 70 established significantly subaverage intellectual functioning, but concluded that Mr. Hill has borderline intellectual functioning, rather than intellectual disability, in light of his adaptive skills. *See, e.g.*, Order of May 13, 2002, *Hill v. Head*, Butts Co. Superior Court Case No. 94-V-216) at 3.

The question of Mr. Hill's intellectual disability thus has always been close because he functions and tests in the range of mild intellectual disability. Nonetheless, the case could have been resolved long before reaching this Court had it arisen in any jurisdiction other than Georgia, which alone among the states and federal government requires a capital defendant to prove his ineligibility for execution under *Atkins v. Virginia* by proof beyond a reasonable doubt. Indeed, the state habeas court twice determined that Mr. Hill had demonstrated his intellectual disability by a preponderance of the evidence but, because of the (now non-existent) conflicting testimony of the state's experts, could not establish his disability by proof beyond a reasonable doubt.

Clearly, had Mr. Hill been held to a less onerous burden of proof, the state habeas court would have found Mr. Hill ineligible for execution. Only because Mr.

Hill's case originates in Georgia does he still face imminent execution because Georgia is the only jurisdiction that compels defendants to meet the heaviest burden of proof in American law – "beyond a reasonable doubt" – in order to invoke *Atkins'* prohibition on the execution of the intellectually disabled. *See* O.C.G.A. § 17-7-131(c)(3), (j).

In affirming the state habeas court's use of the "beyond reasonable doubt" standard, the Georgia Supreme Court rejected Mr. Hill's post-*Atkins* challenge to the reasonable doubt standard and reaffirmed a pre-*Atkins* opinion, *Mosher v. State*, 268 Ga. 555 (1997),[17] holding Georgia's reasonable doubt standard was constitutionally acceptable. *See Head v. Hill*, 277 Ga. 255, 260 (2003). The *Hill* court reasoned that "a[n intellectual disability] claim is comparable to a claim of insanity at the time of the crime in that both relieve a guilty person of at least some of the statutory penalty to which he would otherwise be subjected," and accordingly that the Supreme Court's decision in *Leland v. Oregon*, 343 U.S. 790 (1952), controlled. *Hill*, 277 Ga. at 261 (citing *Mosher*, 269 Ga. at 560). Moreover, the court observed, "as

_____

[17] Georgia statutorily banned the death penalty for individuals with intellectual disability prior to the Supreme Court's decision in *Atkins*. *See, e.g., Atkins*, 536 U.S., at 313-14 (noting that the execution of an intellectually disabled prisoner in Georgia "apparently led to the enactment of the first state statute prohibiting such executions.") (citing O.C.G.A. § 17-7-13(j)).

expressed in *Mosher* . . ., we again distinguish the fundamental right not to stand trial implicated in *Cooper v. Oklahoma*, 517 U.S. 348 . . . (1996), from the procedural burden of proving [intellectual disability]." *Id.* (citing *Mosher*, 269 Ga. at 560). The court observed that "*Cooper* should not be extended to [intellectual disability] decisions *unless the Supreme Court of the United States so requires at some future date.*" *Id.*[18]

In rejecting Mr. Hill's challenge to the reasonable doubt standard, the Georgia Supreme Court expressly relied upon the Supreme Court's observation in *Atkins* that "it was 'leaving to States the task of developing appropriate ways to enforce the constitutional restriction' on executing [intellectually disabled] persons," given that 'there might be 'serious disagreement . . . in determining which offenders are in fact [intellectually disabled].'" *Id.* at 262 (quoting *Atkins*, 536 U.S., at 317). The court concluded that the legislature could constitutionally "establish[] a procedure for considering alleged [intellectual disability] *that limits the exemption to those whose mental deficiencies are significant enough to be provable beyond a reasonable doubt.*" *Id.* at 262 (emphasis added). It observed "that *Cooper* should not be

---

[18] *Cooper* held that the clear and convincing evidence standard was "incompatible with the dictates of due process," due to the fact that it allowed the State to try a defendant who is more likely than not incompetent. 517 U.S. at 369.

extended to [intellectual disability] decisions unless the Supreme Court of the United States so requires at some future date." *Id.* at 261.

The Georgia Supreme Court's rejection of Mr. Hill's challenge to the reasonable doubt standard thus relies on the court's conclusion that the right created by *Atkins* to avoid execution if intellectually disabled is akin to a state-created defense of insanity that is not constitutionally compelled and that states may define intellectual disability through the use of burdens of proof to ensure that only those who are significantly intellectually disabled are able to receive *Atkins*' protections.

As discussed below, the Georgia Supreme Court's rationales for rejecting Mr. Hill's challenge to the reasonable doubt burden of proof do not survive the Supreme Court's decision in *Hall*, which underscores the exceptionally important role that *Atkins*' constitutional prohibition against executing the intellectually disabled plays in preserving "our Nation's commitment to dignity and its duty to teach human decency as the mark of a civilized world" and repudiates the notion that states are free to abrogate that right through procedures that "deny the basic dignity the Constitution protects." *Hall*, 134 S. Ct. at 2001.

The United States Supreme Court's recent decision in *Hall v. Florida* moreover, bears directly on the scope of states' latitude in crafting standards for determining whether individuals are intellectually disabled under *Atkins* and

squarely addresses the issue of risk of error in the intellectual disability determination. However, although *Hall* answers the Georgia Supreme Court's invitation in *Head v. Hill* for clarification as to the proper application of *Atkins*, and was unavailable to Mr. Hill until now, the Georgia Supreme Court recently declined to grant review in another case raising this same issue. *See* Order dated Dec. 9, 2014, in *Holsey v. Chatman*, Supreme Court No. S15W0530 (denying application for certificate of probable cause to address Georgia's intellectual disability burden of proof). Although the Supreme Court of Georgia has yet to do so in Mr. Hill's case, there is no reasonable basis to distinguish the claims raised in *Holsey* from those raised in Mr. Hill's case. Accordingly, Mr. Hill has every reason to believe that the Supreme Court of Georgia will deny the application for certificate of probable cause in short order.

Thus it will fall to this Court to enforce *Atkins* prohibition against the wrongful execution of those with intellectual disability. The Court accordingly should exercise its jurisdiction to certify critical questions to the Supreme Court regarding the construction of 28 U.S.C. § 2244 and the viability of *Sawyer*'s miscarriage of justice exception to the rules of procedural default, and should grant Mr. Hill's request to file a second federal habeas petition.

   A.   **"*Atkins* Did Not Give The States Unfettered Discretion To Define The Full Scope Of The Constitutional Protection**

26

**[Against Executing The Intellectually Disabled].**" *Hall*, 134
S. Ct. at 1998.

*Hall v. Florida* directly undercuts the Georgia Supreme Court's reasoning in

*Head v. Hill* upholding the "beyond reasonable doubt" standard. For example, in

rejecting the argument that, after *Atkins*, the Eighth Amendment placed constraints

on Georgia's implementation of the federal constitutional prohibition against

executing the intellectually disabled, this Court held in *Hill* that *Atkins* appeared to

allow states unlimited latitude to impose any burden of proof whatsoever on

defendants attempting to demonstrate ineligibility for execution under *Atkins*. *See*

*Hill*, 277 Ga. at 260.[19] In so finding, the *Hill* majority ignored long-standing United

States Supreme Court precedent mandating that state procedures for enforcing

---

[19] "*Atkins* specifically left 'to the States the task of developing appropriate
ways to enforce the [federal] constitutional restriction' on executing the [intellectual
disabled]. [Cit. omitted]. Furthermore, nothing in *Atkins* instructs the states to apply
any particular standard of proof to [intellectual disability] claims." *Hill*, 277 Ga. at
261 (*quoting Atkins*, 536 U.S. at 317).

constitutional rights "rooted in the Bill of Rights"[20] must comport with basic federal Due Process standards.[21]

Now, however, in *Hall v. Florida*, the United States Supreme Court has established that, in the context of intellectual disability and *Atkins*, the states are emphatically *not* entitled to craft standards that run afoul of the Eighth and Fourteenth Amendments. Importantly, the *Hall* decision contradicts the Georgia Supreme Court's finding in *Head v. Hill* that *Atkins* reflected a *"lack of consensus as to which mentally impaired persons are constitutionally entitled to an exemption*

---

[20] *Chapman v. California*, 386 U.S. 18, 21 (1967). The Georgia Supreme Court in *Hill* had reasoned that since the United States Supreme Court approved the "beyond reasonable doubt" standard for a state-created insanity defense in *Leland v. Oregon*, 343 U.S. 790 (1952), it was constitutionally permissible in the intellectual disability context. *See Hill*, 277 Ga. at 261. However, if the right is a substantive federal constitutional right, as this one is, then another line of Supreme Court precedent controls. *See Cooper, supra*; *Speiser v. Randall*, 357 U.S. 513 (1958). The Georgia Supreme Court in *Hill* chose the wrong line of precedent – the *Leland* line – contrary to the line of precedent that assesses "procedures for guaranteeing a fundamental constitutional right." *Cooper*, 517 U.S. at 367.

[21] *See, e.g., Speiser*, 357 U.S. at 523, 527 (constitutional due process places limits on states' ability to impose evidentiary presumptions or burdens of proof in enforcing federally guaranteed rights); *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007) (Constitution imposes basic due process requirements on states enforcing Eighth Amendment categorical restriction on execution of the insane, including fair hearing "adequate for reaching reasonably correct results" in determining competency to be executed) (quoting *Ford v. Wainwright*, 477 U.S. 399, 424 (1986)).

from death sentences," thus justifying Georgia's "beyond reasonable doubt" standard as an appropriate "*definition of what degree of impairment qualifies as [intellectually disabled]*." *Hill*, 277 Ga. at 262 (emphasis supplied). In *Hall*, the United States Supreme Court made it clear that there is *no* "lack of consensus" about the clinical definition of intellectual disability, which was "a fundamental premise of *Atkins*,"[22] and that persons with all degrees of intellectual disability are protected from wrongful execution under the Eighth Amendment. *Hall*, 134 S. Ct. at 1998-99. Referring specifically to language in *Atkins* purporting to "leave to the State[s] the task of developing appropriate ways to enforce the constitutional restriction,"[23] the *Hall* majority explained:

> As discussed above, the States play a critical role in advancing protections and providing the Court with information that contributes to an understanding of how intellectual disability should be measured and assessed. But *Atkins did not give the States unfettered discretion to define the full scope of the constitutional protection.*

*Hall*, 134 S. Ct. at 1998 (emphasis supplied).

---

[22] *Hall*, 134 S. Ct. at 1999 (noting that "*Atkins* ... provide[s] substantial guidance on the definition of intellectual disability.").

[23] *Atkins*, 536 U.S. at 317.

In *Hall*, the Florida Supreme Court had interpreted state law to foreclose *Atkins* relief if a defendant obtained an IQ over 70 on intelligence testing. But the United States Supreme Court firmly rejected the State's argument that *Atkins* permitted Florida to define intellectual disability as it saw fit:

> If the States were to have complete autonomy to define intellectual disability as they wished, the Court's decision in *Atkins* could become a nullity, and the Eighth Amendment's protection of human dignity would not become a reality.

*Hall*, 134 S. Ct. at 1999. The Court then held that Florida's strict approach violated the Eighth Amendment both because clinical definitions of intellectual disability recognize that all IQ scores have an inherent standard error of measurement (SEM),[24] thus allowing scores above 70 to qualify for a diagnosis of intellectual disability, and because

> [e]very state legislature to have considered the issue after *Atkins* — save Virginia's — and whose law has been interpreted by its courts has taken a position contrary to that of Florida. . . . The rejection of the strict 70 cutoff in the vast majority of States and the "consistency in the trend" [cit. omitted] toward recognizing the SEM provide strong evidence of consensus that our society does not regard this strict cutoff as proper or humane.

*Hall*, 134 S. Ct. at 1998 (*quoting Roper v. Simmons*, 543 U.S. 551, 572 (2005)).

---

[24] *Hall*, 134 S. Ct. at 1999.

30

Similarly, here, Georgia's "beyond reasonable doubt" standard is unique in the nation. Furthermore, "[e]very state legislature to have considered the issue after *Atkins* . . . and whose law has been interpreted by its courts has taken a position contrary to that of [Georgia]."[25] *Hall*, 134 S. Ct. at 1998. Clearly, judging by the

---

[25] At the time of the 2003 *Head v. Hill* decision in the Georgia Supreme Court, five states utilized the clear and convincing standard for intellectual disability claims: Arizona, Colorado, Florida, Indiana, and Delaware. *See* Ariz. Rev. Stat. § 13-703.02; Colo. Rev. Stat. § 16-9-402(2); Fla. Stat. Ann. § 921.137; Ind. Code Ann. § 35-36-9-4; 11 Del. C. § 4209. However, Indiana's reliance on the clear and convincing standard has since been held unconstitutional under *Atkins*. *See Pruitt v. State*, 834 N.E.2d 90 (Ind. 2005). Prior to *Atkins*, ten states utilized the preponderance standard in determining intellectual disability. *See* Ark. Code Ann. § 5-4-618; S.D. Codified Laws § 23A-27A-26.1; Md. Crim. Law § 2-202; Mo. Rev. Stat. § 565.030; Neb. Rev. Stat. Ann. § 28-105.01; N.M. Stat. Ann. § 31-20A-2.1; N.Y. Crim. Proc. Law § 400.27; N.C. Gen. Stat. § 15A-2005; Tenn. Code Ann. § 9-13-203; Wash. Rev. Code Ann. § 10.95.030. States whose legislatures enacted, or whose courts adopted, the preponderance standard after *Atkins* was decided in 2002 and before *Head v. Hill* issued in 2003 were Utah, Idaho, Virginia, Louisiana, Oklahoma, Mississippi, Ohio and Nevada. *See* Utah Code Ann. § 77-15a-104; Idaho Code § 19-2515A; Va. Code. Ann. § 19.2-264.3:1.1; Nev. Rev. Stat. 174.098; *State v. Williams*, 831 So.2d 835 (La. 2002); *Murphy v. State*, 54 P.3d 556 (Okla. 2002); *State v. Lott*, 97 Ohio St.3d 303 (2002); *Foster v. State*, 848 So.2d 172 (Miss. 2003). By the date of the denial of Mr. Hill's motion for reconsideration in the Georgia Supreme Court in 2003, the number of jurisdictions utilizing the preponderance standard had grown to twenty. *See Franklin v. Maynard*, 588 S.E.2d 604 (S.C. 2003); Cal. Penal Code § 1376(b)(3). Thus, by the final resolution of Mr. Hill's case (*Head v. Hill*) in the Georgia Supreme Court, nearly eighty percent of jurisdictions that had considered the ramifications of *Atkins* or already had statutes in place had adopted the preponderance standard. While several states have yet to adopt standards of any kind, no states have adopted any standard other than preponderance since *Atkins*.

31

unanimous rejection of the "beyond reasonable doubt" standard and the "consistency in the trend" in the procedures by which states implement *Atkins*, there is a clear "consensus that our society does not regard [the 'beyond reasonable doubt' standard] as proper or humane." *Id.* Relief is warranted.

**B.      States Must Not Impose Requirements That "Create[] An Unacceptable Risk That Persons With Intellectual Disability Will Be Executed." *Hall*, 134 S. Ct. at 1990.**

*Atkins* bans the execution of intellectually disabled offenders because none of the penological goals of capital punishment are met by executing those with intellectual disability and individuals who suffer from intellectual disability are at a "special risk of wrongful execution" emerging from the characteristics of the disability itself. *Atkins*, 536 U.S. at 318-21. Intellectual disability is associated with impairments in cognitive ability, judgment and impulse control which render offenders with the disability inherently incapable of the moral blameworthiness for which the death penalty is ostensibly reserved. However, these same characteristics tend to undermine the procedural protections of the criminal justice system, leading to under-recognition of the condition and a particular disadvantage in capital sentencing proceedings, where intellectually disabled offenders tend to have difficulty assisting counsel and a "lesser ability . . . to make a persuasive showing of

mitigation in the face of prosecutorial evidence of one or more aggravating factors." *Id.*

The *Hall* decision determined that, precisely because of this special risk of wrongful execution, states are not free under *Atkins* to enact standards that "create[] an unacceptable risk that persons with intellectual disability will be executed." *Hall*, 134 S. Ct. at 1990. In *Hall*, the Court applied this principle to find that Florida's strict 70 IQ cutoff for intellectual disability claims was flatly unconstitutional. Florida's unique and non-clinically based construction of the medical definition of intellectual disability "ignores the inherent imprecision of these tests [and] risks executing a person who suffers from intellectual disability." *Id.* at 2001.[26] Florida's rule thus denied defendants claiming *Atkins'* protection "a fair opportunity to show that the Constitution prohibits their execution" as well as "the basic dignity the Constitution protects." *Id.*

Georgia's "beyond reasonable doubt" standard is similarly egregious. It violates Due Process and the Eighth Amendment because it is abjectly insufficiently

---

[26] The Court then quoted the American Psychiatric Association's amicus brief which states: "Under the universally accepted clinical standards for diagnosing intellectual disability, the court's determination that Mr. Hall is not intellectually disabled cannot be considered valid." *Id.*

protective of the right of intellectually disabled offenders not to be executed. Instead of ameliorating the risk of wrongful execution, as *Atkins* commands, the standard virtually guarantees that claimants who can prove to a reasonable medical certainty that they are more than likely intellectually disabled will still be executed. In addition to directly contravening *Hall*'s command that state standards must not enhance the risk of wrongful execution of intellectually disabled defendants, the "beyond reasonable doubt" standard violates long-standing Supreme Court jurisprudence which holds that substantive constitutional rights must be adequately protected and enforced by procedures that comport with basic Due Process.

That jurisprudence establishes that where a burden of proof creates the likelihood that a right enshrined in the Bill of Rights will be violated, it is constitutionally intolerable.[27] Just as with the competency issue in *Cooper*, the "beyond reasonable doubt" standard, "[f]ar from 'jealously guard[ing],' . . . [an intellectually disabled] criminal defendant's fundamental right not to [be executed] . . . imposes a significant risk of an erroneous determination that the defendant is

---

[27] *See, e.g., Speiser, Cooper, Panetti, supra; In Re Winship*, 397 U.S. 358 (1970); *Addington v. Texas*, 441 U.S. 418 (1979).

34

[not intellectually disabled]." *Cooper*, 517 U.S. at 363.[28] "It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether [intellectually disabled] men are being condemned." *Winship*, 397 U.S. at 364 (paraphrasing).

*Hall* now emphatically affirms that the "beyond reasonable doubt" standard violates the Constitution because it authorizes the execution of persons who can prove they are more likely than not intellectually disabled. As *Hall* unequivocally clarifies, *Atkins* commands that states protect all intellectually disabled persons[29] – who are all at "special risk of wrongful execution"[30] because of their disabilities – by "appropriate"[31] procedures which, perforce, must not "create[] an unacceptable

---

[28] *See also id.* at 368 ("because Oklahoma's procedural rule allows the state to put to trial a defendant who is more likely than not incompetent, the rule is incompatible with the dictates of due process.").

[29] *Atkins*, 536 U.S. at 308 n.3, 317 n.22 (indicating national consensus against executing offenders across entire spectrum of intellectual disability severity); *Hall*, 134 S. Ct. at 1999 (reiterating that *Atkins* found a national consensus as to the definition of intellectual disability based on clinical definitions); *see also Stripling v. State*, 261 Ga. 1, 4 (1991) (Georgia protects from execution all intellectually disabled offenders, including those with mild intellectual disability).

[30] *Atkins*, 536 U.S. at 321.

[31] *Id.* at 317.

35

risk that persons with intellectual disability will be executed."[32]  Georgia's "rigid rule" is unquestionably incompatible with the Eighth and Fourteenth Amendments because it denies Mr. Hill and claimants like him "a fair opportunity to show that the Constitution prohibits [his] execution," thus denying him "the basic dignity the Constitution protects," and unacceptably "risk[ing] executi[on of] a person who suffers from intellectual disability." *Hall*, 134 S. Ct. at 2001.  Because the "beyond reasonable doubt" standard guarantees that intellectually disabled persons, and Mr. Hill specifically, will be executed, it is contrary to *Atkins* and unconstitutional. Relief is warranted.

### C. *Hall* Establishes That States May Not Ignore Clinical Diagnostic Practices And Definitions In Formulating Procedures To Enforce The Eighth Amendment Under *Atkins*.

Crucially, *Hall* also holds that, in enacting mechanisms to determine who qualifies for protection under *Atkins*, states are not free to ignore the medical/psychiatric community's diagnostic and clinical practices and concepts with respect to intellectual disability.  In *Hall*, which involved Florida's strict requirement that IQs above 70 decisively ruled out a finding of intellectual disability, the United

---

[32] *See, Hall*, 134 S. Ct. at 1990. *See also, e.g., Cooper*, 517 U.S. at 363; *Panetti*, 551 U.S. at 954.

States Supreme Court emphatically reiterated that "clinical definitions of intellectual disability, which take into account that IQ scores represent a range, not a fixed number, were a fundamental premise of *Atkins*." *Hall*, 134 S. Ct. at 1999. Those clinical definitions were derived from the medical community, specifically from the authoritative organizations providing definitional and conceptual guidance as to intellectual disability, *i.e.*, the AAIDD and the American Psychiatric Association (APA). *See id.* at 1995. In vitiating Florida's rule, the Court exhorted the states to give effect to the guidance of the medical community and relied explicitly on that community's assessment of the deleterious effect of Florida's strict rule:

> Intellectual disability is a condition, not a number. See DSM–5, at 37. *Courts must recognize, as does the medical community*, that the IQ test is imprecise. This is not to say that an IQ test score is unhelpful. It is of considerable significance, as the medical community recognizes. But in using these scores to assess a defendant's eligibility for the death penalty, *a State must afford these test scores the same studied skepticism that those who design and use the tests do*, and understand that an IQ test score represents a range rather than a fixed number. *A State that ignores the inherent imprecision of these tests risks executing a person who suffers from intellectual disability.* *See* APA Brief 17 ("Under the universally accepted clinical standards for diagnosing intellectual disability, *the court's determination that Mr. Hall is not intellectually disabled cannot be considered valid*").

*Id.* at 2001 (emphasis supplied).

The Georgia Supreme Court therefore was obliged to recognize as authoritative the guidance provided by AAIDD, which, in its amicus brief in the case

of *Hill v. Humphrey* before the United States Supreme Court, explained that Georgia's "beyond reasonable doubt" standard was untenable from a diagnostic standpoint:

> The nature of clinical assessment of [intellectual disability], combined with the special difficulties created by the context of a capital trial, will often make the burden of proof imposed by Georgia virtually impossible to meet. "All diagnoses of [intellectual disability] are potentially challenging," AAIDD, User's Guide: Mental Retardation Definitions, Classification and Systems of Support 14 (10th ed. 2007), and even in ideal settings, clinicians and other qualified experts ordinarily diagnose [intellectual disability] only to a reasonable degree of medical (or professional) certainty. Thus, *the beyond a reasonable doubt standard gives license to Georgia prosecutors to argue that reasonable degree of certainty (the clinical norm) fails to satisfy the required burden of proof.*
>
> Capital cases, moreover, are far from ideal diagnostic settings. Most broadly, the standards and practices for assessing [intellectual disability] evolved in large part to determine what supports are appropriate for the individual being diagnosed . . . a task that easily may be distorted by the adversarial process of *Atkins* determinations. . . . *Consequently, the imposition of [the "beyond reasonable doubt"] standard will deprive persons with [intellectual disability] of the protection of the Eighth Amendment.*

AAIDD and ARC of USA Amicus Brief in *Hill v. Humphrey*, United States Supreme Court Case No. 11-10109, at 4-5 (emphasis supplied). Relief is warranted.

**III. Because Mr. Hill's Claim Establishes That He Is Actually Innocent Of the Death Penalty And That His Execution Would Thus Be A Miscarriage Of Justice, He Should Be Allowed To File A Successive**

38

**Habeas Petition, Irrespective Of The Literal Language Of 28 U.S.C. § 2244(b)(1).**

28 U.S.C. 2244(b)(1) provides that "[a] claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." Given the equitable nature of habeas corpus, however, the statute should not be deemed to constrain this Court's authority to prevent a fundamental miscarriage of justice. *See, e.g., Kuhlmann v. Wilson,* 477 U.S. 436, 454 (1986); *Sawyer v. Whitley,* 505 U.S. 333, 336 (1992). This Court's panel decision in *In re Hill,* 715 F.3d 284, 299-301 (2013), which held that *Sawyer's* "actual innocence of the death penalty" did not survive the enactment of AEDPA, has no binding authority. *See* Section I *supra.* This panel should hold to the contrary that the ambiguities in the statute render its language and meaning less than clear, and should construe the statute in light of the equitable principles that have traditionally informed a federal court's habeas powers. *See, e.g., Munaf v. Geren,* 553 U.S. 674, 693 (2008) ("Habeas corpus is 'governed by equitable principles.'") (citation omitted).

The AEDPA, as a whole, "is hardly a model of clarity" *O'Brien v. Dubois,* 145 F.3d 16, 20 (1st Cir. 1998) – as the abundance of case law attempting to construe its meaning underscores. *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997) (observing that "in a world of silk purses and pigs' ears, the Act is not a silk purse of the art of

statutory drafting"). Section 2244 is no exception. Among other things, the statute's apparent prohibition of "second or successive habeas corpus application[s]" that raise claims "presented in a prior application," 28 U.S.C. § 2244(b)(1), but allowing "second or successive" applications raising claims "not presented in a prior application" under certain circumstances, § 2244(b)(2), makes little sense, given that, by definition, a "'successive petition' raises grounds identical to those raised and rejected on the merits on a prior petition." *Kuhlmann*, 477 U.S. at 444 n. 6. *See also Panetti*, 551 U.S. at 943-44 (noting that the "phrase 'second or successive' is not self-defining" and "takes its full meaning from our case law, including decisions predating the enactment" of the AEDPA).

Moreover, irrespective of 2244 (b)(1)'s language, AEDPA should not be read to prevent this Court – or other federal courts – from reaching the merits of a claim where to do so would result in a fundamental miscarriage of justice. In interpreting AEDPA's provisions, the Supreme Court has noted its willingness to look to the "implications for habeas practice." *Stewart v. Martinez-Villareal*, 523 U.S. 637, 644 (1998). Specifically, the Court has expressly avoided interpreting the statute in a way that would "produce troublesome results," "create procedural anomalies," and "close [the Court's] doors to a class of habeas petitioners seeking review without any clear indication that such was Congress' intent." *Castro v. United States*, 540 U.S. 375,

380-81 (2008); *see also Panetti*, 551 U.S. at 946 (eschewing a literalist interpretation of section 2244(b) in favor of one that avoided "troublesome results" and that did not "close [federal courts] to a class of habeas petitioners seeking review without any clear indication that such was Congress' intent"); *Martinez-Villareal*, 523 U.S. at 644 (rejecting literal reading of section 2244(b) to avoid "perverse" results).

As the Supreme Court recently stated, AEDPA seeks to eliminate delays in the federal habeas review process "without undermining basic habeas corpus principles and while seeking to harmonize the new statute with prior law." *Holland v. Florida*, 560 U.S. 631, 648 (2010); *see also Slack v. McDaniel*, 529 U.S. 473, 483 (2000) ("AEDPA's present provisions ... incorporate earlier habeas corpus principles."). "When Congress codified new rules governing this previously judicially managed area of law, it did so without losing sight of the fact that the 'writ of habeas corpus plays a vital role in protecting constitutional rights.'" *Holland*, 560 U.S., at 649 (citing *Slack*, 529 U.S. at 483). *See also Kuhlmann v. Wilson*, 477 U.S. 436, 449, 451-52 (1986) (applying "the ends of justice" exception to successive claims, even though Congress had eliminated the exception from section 2244 (b) in 1966).

Mr. Hill maintains that his categorical ineligibility for the death penalty, or innocence of the death penalty, satisfies the strictures of 28 U.S.C. § 2244(b). To

41

hold otherwise would be a perversion of the most fundamental principles of justice and would condone an unconstitutional punishment. The statute should and can be construed in a manner which avoids an unconstitutional result.

## IV. Mr. Hill Has Made a Prima Facie Showing That His Application Satisfies 28 U.S.C. § 2244(b)(2)(B).

Pursuant to the AEDPA, a court of appeals may authorize the filing of a second or successive habeas corpus application upon a determination that the application makes a prima facie showing that one or more of the claims therein satisfies the requirements of 28 U.S.C. §2244(b). *See* 28 U.S.C. § 2244(b)(2)(C). As relevant here, the required showing is that: "(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2244(b)(2)(A).[33]

---

[33] The final determination as to whether the applicant's claim in fact satisfies the requirements of 28 U.S.C. § 2244(b) is made by the district court. 28 U.S.C. § 2244(b)(4). *See also In re Johnson,* 322 F. 3d 881, 883 (5th Cir. 2003) ("The district court 'must conduct a thorough review to determine if the motion conclusively demonstrates that it does not meet AEDPA's second or successive motion requirements'") (quoting *Reyes-Requena v. United states,* 243 F.3d 893 899 (5th Cir. 2001)). The role of the court of appeals, in contrast, is one of "gatekeeper." *Felker v. Turpin,* 518 U.S. 651, 657 (2000); *Crouch v. Norris,* 251 F.3d 720, 721 (8th Cir. 2001). The Court must decide only whether the applicant has made "a sufficient showing of possible merit to warrant a fuller exploration by the district

### A. The Rule Articulated in *Hall v. Florida* Constitutes a New Rule of Constitutional Law for Purposes of 28 U.S.C. § 2244(b)(2)(A).

Mr. Hill relies here on the new constitutional rule set forth in *Hall v. Florida*. "[A] case announces a new rule if the result was not *dictated* by precedent existing when the defendant's conviction became final." *Teague v. Lane*, 489 U.S. 288, 301 (1989). The conclusion that Mr. Hill is intellectually disabled and thus ineligible for execution is now, only after the new rule articulated in *Hall*, "dictated" by law.

As discussed *supra*, Mr. Hill's intellectual disability claim was rejected by the Georgia courts solely on the basis that the State's presentation of evidence challenging the degree of Mr. Hill's intellectual impairment precluded a finding of intellectual disability by proof beyond a reasonable doubt, though the court expressly found that he had proven intellectual disability by a preponderance of the evidence. Moreover, The Georgia Supreme Court affirmed on the basis that *Atkins* had left entirely to the States' discretion the standards for determining which individuals

---

court." *Bennett v. United States,* 119 F.3d 468, 469 (7th Cir. 1997). *See also Johnson,* 322 F.3d at 881 (same); *In re Williams,* 330 F.3d 277, 281 (4th Cir. 2003) (same); *Cooper v. Woodford,* 358 F.3d 1117, 1119 (9th Cir. 2004) (same); *In re Lott,* 366 F.3d 431, 432-33 (6th Cir. 2004) (same). If "it appears reasonably likely" that the application satisfies the requirements of 28 U.S.C. §2244(b), the motion for permission to file in the district court should be granted. *Bennett,* 119 F.3d at 469-70. This is "not a difficult standard to meet." *Lott,* 366 F.3d at 432.

would fall into the class of individuals protected by *Atkins v. Virginia. See Head v. Hill*, 277 Ga. 255, 260 (2003) ("[N]othing in *Atkins* instructs the states to apply any particular standard of proof to [intellectual disability] claims. 'The United States Supreme Court has not mandated a particular standard, but has left the task to the individual states . . . .'") (quoting *Murphy v. State*, 2002 OK CR 32, 54 P3d 556, 568, n.20 (Okl. Crim. App. 2002)). Indeed, the Georgia Supreme Court explicitly declined to apply the principles articulated in the Supreme Court's decision in *Cooper v. Oklahoma*, 517 U.S. 348 (1996), to the Georgia's standard of proof for intellectual disability claims. *Hill*, 277 Ga. at 261. *Head v. Hill*, 277 Ga. at 261 ("[W]e have repeatedly rejected the application of *Cooper*'s preponderance of the evidence standard to cases involving [intellectual disability].").

Similarly, in deciding that the federal courts could not strike down Georgia's burden of proof based on the Georgia Supreme Court's ruling in *Hill*, this Court, sitting *en banc*, stated that although Georgia's law may be "incorrect or unwise," only the United States Supreme Court could authoritatively pass on the issue for federal courts to act. *Hill v. Humphrey*, 662 F.3d 1335, 1360 (11th Cir. 2011).

In *Hall*, the United States Supreme Court provided just that authority. As one panel of this Court recently observed, "[n]othing in *Atkins* dictated or compelled the Supreme Court in *Hall* to limit the states' previously recognized power to set an IQ

score of 70 as a hard cut-off.  This is plainly a new obligation that was never before imposed on the states, under the clear language of *Atkins*, and of *Hall* itself." *In re Henry*, 757 F.3d at 1159.  In short, *Hall* rescinded the vast discretion granted to states in *Atkins*,[34] and mandated that states refrain from creating laws, rules, or [procedures] that in some way "deny the basic dignity the Constitution protects"[35] by "creat[ing] an unacceptable risk that persons with intellectual disability will be executed."[36]  In so doing, *Hall* dictated that states may not "disregard[] established medical practice"[37] and accepted clinical standards regarding the diagnosis of intellectual disability when enacting laws and practices that delineate the individuals in a given state protected by the rule articulated in *Atkins*.

**B.**     ***Hall v. Florida* Should Be Applied Retroactively, As It Is A Substantive Rule.**

A panel of this Court in *In re Henry* determined that, although *Hall* is a new rule, it does not apply retroactively to cases on collateral review.  *Henry*, 757 F.3d

---

[34] *Atkins*, 536 U.S. at 317 ("'[W]e leave to the States the task of developing appropriate ways to enforce the constitutional restriction upon its execution of sentences.'" (quoting *Ford v. Wainwright*, 477 U.S. 399, 405 (1986)).

[35] *Hall*, 134 S. Ct. at 2001.

[36] *Id.* at 1990.

[37] *Id.* at 1995.

at 1159. The panel's reasoning centered on the idea that *Hall* was a rule governing procedure, not substance. *Id.* at 1159-61. Well-established United States Supreme Court law, however, dictates the opposite conclusion.

*Hall* issues a new *substantive* rule, not a *procedural* rule governed by *Teague v. Lane*, 489 U.S. 288 (1998). As such, the rule in *Hall* applies retroactively:

> New *substantive* rules apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms, *see Bousley v. United States*, 523 U.S. 614, 620-621 (1998), as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish, *see Saffle v. Parks*, 494 U.S. 484, 494-495 (1990); *Teague v. Lane*, 489 U.S. 288, 311 (1989) (plurality opinion). Such rules apply retroactively because they "necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal'" or faces a punishment that the law cannot impose upon him. *Bousley, supra,* at 620, (quoting *Davis v. United States,* 417 U.S. 333, 346 (1974)).

*Schriro v. Summerlin*, 542 U.S. 348, 351-352 (2004) (internal parallel citations and footnote omitted).

In *Bousley v. United States*, 523 U.S. 614 (1998), the Supreme Court addressed the retroactivity of a court's interpretation of one prong of a criminal statute for use in collateral attacks. The Court concluded that the new rule was substantive, because in defining the contours of the criminal statute and determining that it did not reach certain conduct, the new rule fell into the class of rules that

"necessarily carry a significant risk that a defendant stands convicted of "an act that the law does not make criminal." *Bousley*, 523 U.S. at 620 (quoting *United States v. Lanier*, 520 U.S. 259, 267, n.6 (1997)).

Analogously here, *Hall* puts certain persons outside the reach of certain punishment – namely, execution – by imposing certain limitations on states regarding the ways in which they define intellectually disabled individuals. In so doing, "[t]he *Hall* opinion did not merely address the procedural method for determining who is intellectually disabled," but rather "expanded the definition of intellectual disability and along with it the class of defendants who are not eligible to be executed under *Atkins*." *Henry*, 757 F.3d at 1167 (Martin, J. dissenting).

Like the IQ cutoff at issue in *Hall*, Georgia's beyond a reasonable doubt standard constitutes a substantive aspect of the definition of intellectual disability. *See, e.g., Medronic Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 849 (noting "that 'the burden of proof' is a '"substantive aspect of a claim"'") (citing cases). *Hall*, then, is a "substantive limitation on the power of the state to define who is [intellectually disabled]," mandated to ensure that state rules do not "create[] an unacceptable risk that persons with intellectual disability will be executed." *Hall*, 134 S. Ct. at 1990.

Accordingly, because the rule articulated in *Hall* is a new, substantive, constitutional rule, it should be applied retroactively and available in collateral attacks.

**V.    This Court Should Certify The Important Questions Raised In This Case To The United States Supreme Court In Order To Obtain Definitive Rulings In Light Of The AEDPA's Language Rendering Panel Decisions Under Section 2244 Otherwise Unreviewable.**

Congress has provided that, "[i]n a case of actual controversy within its jurisdiction . . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.D. § 2201(a). This Court has jurisdiction under 28 U.S.C. § 2244 to address in the first instance whether Mr. Hill may be permitted to file a second habeas petition to challenge his eligibility for the death penalty under *Atkins* and *Hall*.[38]

---

[38]    Although Mr. Hill's claim is not fully exhausted, as the Supreme Court of Georgia has not yet ruled on his application for certificate of probable cause to appeal, that does not strip this Court of jurisdiction to consider Mr. Hill's request to have important, otherwise unreviewable issues, certified to the United State Supreme Court. The exhaustion requirement is not jurisdictional in nature and does not require dismissal of this action. *See, e.g.*, *Day v. McDonough*, 547 U.S. 198, 205 (2006) (noting that exhaustion of state remedies is "nonjurisdictional"); *Rhines v. Webber*, 544 U.S. 269 (2005) (holding that district court has discretion to stay a mixed petition to allow petition to exhaust state court remedies).

In *Felker v. Turpin*, 518 U.S. 651, 667 (1996), Justice Souter, joined by Justices Steven and Breyer, suggested that Section 2244's "text does not necessarily foreclose all of [the Supreme Court's] appellate jurisdiction" given the authority of circuit courts to certify questions to the Supreme Court pursuant to 28 U.S.C. § 1254(2). Whether *Sawyer* survived the enactment of the AEDPA, whether *Hall* has retroactive effect, and, indeed, whether unreviewable decisions denying the right to file a second or successive habeas petition are binding precedent are important questions that should be determined by the Supreme Court. Accordingly, pursuant to 28 U.S.C. § 1254(2) and 28 U.S.C. § 2201(a), Mr. Hill respectfully asks the panel to certify these questions to the United States Supreme Court, and to stay his case and hold it in abeyance pending the Supreme Court's ruling.[39]

---

[39] 28 U.S.C. § 1254 provides :

Cases in the courts of appeals may be reviewed by the Supreme Court by the following methods:

**(1)** By writ of certiorari granted upon the petition of any party to any civil or criminal case, before or after rendition of judgment or decree;

**(2)** By certification at any time by a court of appeals of any question of law in any civil or criminal case as to which instructions are desired, and upon such certification the Supreme Court may give binding instructions or require the entire record to be sent up for decision of the entire matter in controversy.

49

## CONCLUSION

For the foregoing reasons, Mr. Hill respectfully requests that the Court enter a stay of execution and grant him permission to file a petition for writ of habeas corpus in the district court.

Dated this 15th day of January, 2015.

Respectfully submitted,

Brian S. Kammer (Ga.406322)
Marcia A. Widder (Ga. 643407)
Georgia Resource Center
303 Elizabeth Street, NE
Atlanta, Georgia 30307
Telephone: (404) 222-9202
Fax: (404) 222-9212

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

IN RE WARREN LEE HILL, JR., )
   Petitioner,    )   THIS IS A CAPITAL CASE
         )   Case No. 15-
         )

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have served a copy of the foregoing document and this

notice of filing on counsel for Respondent by and electronic mail to the following

address:

  Beth Burton, Esq.
  Deputy Attorney General
  40 Capitol Square, SW
  Atlanta, Georgia 30334
  bburton@law.ga.gov

This the 15th day of January, 2015.

          _____
          Attorney